NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0559n.06

Case No. 13-4287

**FILED**
*Jul 25, 2014*
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KERI KING, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| DALE ALEXANDER *et al.*, | ) | OHIO |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | OPINION |
| _____ | ) | |

**Before: BOGGS, CLAY, and GILMAN, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Two of Keri King's fingers had to be amputated due to a bone infection, the first before her incarceration and the second less than a month after she entered the Summit County Jail in Akron, Ohio. Following the second amputation, King filed suit under 42 U.S.C. § 1983, alleging that various jailers, medical personnel, and Advanced Correctional Healthcare were deliberately indifferent to her serious medical needs.

The district court granted summary judgment in favor of the defendants. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

**A.     Factual background**

King's own affidavit is her sole evidence in response to the defendants' motion for summary judgment.  In her affidavit, King states that she suffered serious burns in an accident at her home in March 2010, causing her to develop a bone infection called osteomyelitis in her left hand.  Her doctors eventually had to amputate her left ring finger due to the osteomyelitis.  After the amputation, King's doctors told her that the osteomyelitis was gone.

In July 2010, King was incarcerated at the Summit County Jail for reasons not specified in the record.  King's left hand became reinfected while she was in the jail, necessitating the amputation of her left little finger in August 2010.

After her first amputation, King contends that her doctors (who are not parties to this action) instructed her "to keep [her] burns dressed at all times, to change [her] dressings more than once per day, and to use the pre-medicated dressing that [she] had been given by the hospital."  King informed the medical staff at the jail about these instructions and requested to be placed in the jail's medical unit to diminish the likelihood of contracting a subsequent infection.  But King alleges that the medical staff refused to change her dressings more than once per day, used a non-medicated dressing on her injury, and placed her with the general prison population.

As King's condition worsened, she was transferred to the jail's medical unit, where she was allegedly placed "in close proximity" to an inmate suffering from a staph infection.  Her requests to be moved away from the infected inmate were denied.

**B.      Procedural background**

King filed her complaint in July 2012.  In June 2013, after King failed to conduct any discovery, the defendants moved for summary judgment.  The court granted their motion and entered final judgment against King.  This timely appeal followed.

## II.  ANALYSIS

**A.      Standard of review**

We review a district court's grant of summary judgment de novo.  *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012).  Summary judgment is appropriate if the record, when viewed in the light most favorable to the nonmovant, reveals that no genuine dispute of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  In other words, "[n]o genuine dispute of material fact exists where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 131 (6th Cir. 2014).

**B.      Deliberate indifference**

"The Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward the inmate's serious medical needs."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (internal quotation marks omitted).  A constitutional claim under 42 U.S.C. § 1983 for deliberate indifference, based on the denial of medical care, has both objective and subjective components.  *Id.*  The objective component requires the existence of a "sufficiently serious" medical need, which has been defined as one "that has been diagnosed by a physician as mandating treatment

or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotation marks omitted). As for the subjective component, an inmate must

> show that prison officials have a sufficiently culpable state of mind in denying medical care. Officials have a sufficiently culpable state of mind where officials act with deliberate indifference to a serious medical need. The Supreme Court has defined deliberate indifference as being more than mere negligence but less than acting with purpose or knowledge. Instead, the prison official must have acted with a state of mind similar to recklessness. Thus, to prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk.

*Id.* (internal citations omitted) (internal quotation marks omitted).

The principal dispute in this case is whether King must submit medical expert testimony to satisfy the objective component of her deliberate-indifference claim. King argues that no expert testimony is required because (1) severe burns are obvious to lay people, (2) the treatment of her burns required repeated changings of her medical dressing, and (3) exposing her to a staph-infected inmate was an unreasonable threat of harm that aggravated her condition.

The law in this circuit is to the contrary. In *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001), which addressed a prisoner's claim arising from a delay in receiving kidney dialysis, this court held that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." (internal quotation marks omitted). Three years later, *Blackmore* held that corroborating medical evidence is also needed "where the plaintiff's deliberate indifference claim is based on the prison's failure to *treat a condition adequately,* or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious

medical injury." 390 F.3d at 898 (emphasis added) (internal quotation marks omitted). The effect of these cases is that "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks omitted).

King argues that she has satisfied the objective component of the deliberate-indifference standard by "show[ing] that [s]he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *See Blackmore*, 390 F.3d at 900. But because King essentially alleges that the jail's medical staff treated her infection differently from the doctors who oversaw her initial amputation, her claim stems from the alleged inadequacy of her medical treatment in jail, not from a complete absence of medical care.

This case is therefore analogous to *Santiago v. Ringle*, 734 F.3d 585 (6th Cir. 2013), where Santiago did "not allege that he received *no* medical treatment . . . . Instead, he complain[ed] that he was delayed in receiving a *specific type* of medical treatment." *See id.* at 591 (emphasis in original). The court held that Santiago failed to establish a deliberate-indifference claim because "a claim based on the prison's failure to treat a condition adequately . . . [requires] medical proof . . . to assess whether the delay caused a serious medical injury," *id.* (internal quotation marks omitted), and Santiago presented no such proof.

Similarly, King's claim that the defendants "failed and refused to follow the instructions I gave for dressing my burns" is simply an unrequited request for a specific type of medical treatment. King's failure to provide medical expert testimony to establish a causal link between

her injury and the allegedly inadequate treatment thus dooms her deliberate-indifference claim. *See Santiago*, 734 F.3d. at 591.

The cases relied on by King, moreover, are easily distinguishable. In *Blackmore*, for example, a panel of this court concluded that medical expert testimony was not necessary to support a deliberate-indifference claim where Blackmore received *no* medical care within a reasonable timeframe. *See Blackmore*, 390 F.3d at 899–90. And in *Johnson v. Karnes*, 398 F.3d 868 (6th Cir. 2005), Johnson did not need to submit verifying medical evidence because prison officials changed his bandage only once during his month-long stay in prison and because "[h]is medical request forms stated that his tendons were completely severed—a condition that almost any lay person would realize to be serious." *See id.* at 874.

King's bandages, by contrast, were changed daily and she was even transferred to the prison's medical ward for further treatment. Her claim thus fails because she offered no medical expert testimony to establish a causal link between the loss of her little finger and the alleged inadequacy of her treatment. *See Santiago*, 734 F.3d at 591.

Finally, even if we were to excuse the lack of medical expert testimony regarding causation, King's claim would still fail because her sole evidence is a self-generated affidavit that details her previous doctors' medical instructions. These alleged statements made by her doctors are inadmissible hearsay, which cannot be used to create a genuine dispute of material fact. *See Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (explaining that "evidence submitted in opposition to a motion for summary judgment must be admissible. . . . That is why [h]earsay evidence . . . must be disregarded") (internal citations omitted) (internal quotation marks omitted). Moreover, King is not qualified to describe what constitutes medically acceptable practices for the treatment of her burns, so we cannot consider her statements

concerning the cause of her second infection or the effect of being placed near a staph-infected inmate.

The evidence in support of King's claim is simply inadequate to create a genuine dispute of material fact under 42 U.S.C. § 1983. Perhaps she has a claim for medical malpractice under state law, but she has provided insufficient evidence to maintain a constitutional claim for deliberate indifference under federal law.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.