NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0410n.06

No. 16-3444

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 14, 2017
DEBORAH S. HUNT, Clerk

ADRIAN ANTHONY,

       **Plaintiff-Appellant,**

v.

SHANNON SWANSON, et al.,

       **Defendants-Appellees.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE:     BOGGS, CLAY, and SUTTON, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Adrian Anthony filed suit pursuant to 42 U.S.C. § 1983 alleging a violation of his Eighth Amendment rights against Defendants Dr. Shannon Swanson and Dr. Daniel Cherry. Plaintiff's suit alleged that Dr. Swanson and Dr. Cherry were deliberately indifferent to Anthony's medical needs during his incarceration as a prisoner by the State of Ohio. The district court granted summary judgment on behalf of Dr. Swanson and Dr. Cherry, and Anthony now appeals. For the reasons set forth below, we **AFFIRM** the district court's decision.

## BACKGROUND

### I.    Factual background

Anthony was incarcerated in Ohio prison facilities from December 23, 2010 to August 4, 2014. Prior to his incarceration, Anthony was diagnosed with prostate cancer. Consequently,

during his incarceration, he received multiple sessions of external-beam-radiation therapy. As a result of this treatment, Anthony experienced rectal bleeding and chronic abdominal pain, leading physicians at the Lorain Correctional Institution to diagnose him with radiation proctitis—also known as radiation poisoning. In April 2011, Anthony was transferred to the Lake Erie Correctional Institution, at which time he came under the care of Dr. Swanson. Dr. Cherry, as the regional medical director, supervised Dr. Swanson.

In May 2011, Anthony was seen by Dr. Rajnikant Patel, an outside physician at the Ashtabula County Medical Center, who diagnosed him with severe radiation proctitis of the rectum and recommended treatment with prednisone, a steroid. Anthony's condition did not abate despite regular use of the steroidal cream. During a follow-up visit in November 2011, Dr. Patel recommended colostomy surgery as a last resort to relieve Anthony's symptoms. A colostomy is a surgical procedure in which portions of the bowel are removed and the remaining bowel system is diverted to a pouch—a colostomy bag—allowing stool to exit outside of the body. Anthony states that he informed Dr. Swanson about the recommendation.

At this juncture, Anthony and Dr. Swanson's narratives diverge. According to Dr. Swanson, she advised Anthony against the surgery because she did not believe it to be medically necessary. Instead, she suggested conservative treatment options. Based on her account of events, Anthony concurred with her assessment and declined the surgery.[1] Conversely, Anthony claims that Dr. Swanson did not order the surgery because "her hands were tied. She told me that her supervisors would not let her do anything." (R. 36-2, Anthony Decl., PageID # 525). Additionally, Anthony alleges that he never refused surgery.

---

[1] Dr. Cherry submitted an affidavit averring that he never provided hands-on medical treatment to Anthony, but nonetheless stated that he concurred with Dr. Swanson's decision to opt for a more conservative treatment plan.

There is no dispute that Anthony continued to be seen and treated by Dr. Swanson throughout his term of incarceration. Dr. Swanson and other medical personnel responded to his on-going health grievances. His blood and urine were regularly tested to monitor his condition. He attended cancer clinic checkups. He was allowed to be seen by an outside provider who ordered bloodwork and other tests. Dr. Swanson continued to order medical "lay-ins" for Anthony. She renewed his long-term restrictions, including no standing for longer than fifteen minutes. She prescribed anti-reflux medication and pain pills. And she continued to prescribe prednisone. However, at no point did Dr. Swanson seek surgical intervention for Anthony. Anthony was released from prison in July 2013 and currently resides in Canton, Ohio. He continues to suffer from pain and rectal bleeding, but claims that he has been unable to undergo surgery because of financial difficulties.

## II.    Procedural History

On January 23, 2014, Anthony filed a complaint in the United States District Court for the Northern District of Ohio against Dr. Swanson and Dr. Cherry. Defendants, Dr. Swanson and Dr. Cherry, filed separate motions for summary judgment disputing Anthony's Eighth Amendment claim. On March 31, 2016, the district court granted summary judgment in favor of both Defendants. Anthony thereafter filed a timely notice of appeal.

## DISCUSSION

## I.    Standard of Review

This Court reviews *de novo* the district court's grant of summary judgment. *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court must consider "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986). In determining whether there is a "genuine issue for trial," this Court interprets the facts and draws all reasonable inferences therefrom in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## II.    Analysis

Anthony brought a claim under 42 U.S.C. § 1983, alleging a violation of his Eighth Amendment rights. To state a claim under § 1983, a plaintiff must set "forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (citation omitted). Neither party disputes that Dr. Swanson and Dr. Cherry acted under color of state law; rather, the question raised on appeal is whether Anthony suffered an unconstitutional deprivation of his right to medical care.

Anthony contends that Dr. Swanson and Dr. Cherry exhibited deliberate indifference to his serious medical needs by declining to schedule the colostomy surgery that was recommended by a physician from outside the prison system. The Supreme Court has held that "deliberate indifference" to the serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). To establish this type of claim, a prisoner must show that the defendants were not only "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" but also the defendants must in fact draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In other words, a deliberate-indifference claim

has both an objective and subjective component. *Mattox v. Edelman*, 851 F.3d 583, 597 (6th Cir. 2017).

To satisfy the "objective" prong of a deliberate-indifference claim, a plaintiff must show that his medical needs were "sufficiently serious." A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004)). After making the requisite objective showing, Plaintiff must then demonstrate that: (1) "the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner"; (2) the official "did in fact draw the inference"; and (3) the official "then disregarded that risk." *Rouster*, 749 F.3d at 446 (citation omitted).

As a threshold matter, there is a dispute in the record concerning whether Anthony elected to undergo more conservative treatment in lieu of the colostomy surgery. Dr. Swanson submitted an affidavit averring that Anthony declined colostomy surgery. Conversely, Anthony submitted an affidavit attesting that he desired the surgery but Dr. Swanson refused to authorize it. While this Court "does not find facts," at the summary judgment stage, this Court must determine whether the district court correctly found there were no "genuine disputes of material fact that should go to a jury." *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 381 (6th Cir. 2017). A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001). And although Anthony points to a factual dispute that exists in the record, we do not find this dispute genuine because even if we credit Anthony's version of the facts, his Eighth Amendment claim still fails.

It should be reiterated that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (quoting *Estelle*, 429 U.S. at 105). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence *deliberate indifference* to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* (citation omitted). As previously stated, this Circuit recognizes two distinct methods for establishing the objective component of an Eighth Amendment claim. A medical need may be sufficiently serious if it "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (citation omitted). This stems from the premise that, if the need for medical treatment is so obvious, "the delay alone in providing medical care creates a substantial risk of serious harm." *Blosser v. Gilbert*, 422 F. App'x 453, 460 (6th Cir. 2011) (quoting *Blackmore*, 390 F.3d at 899). However, if a medical need is less obvious, its seriousness is evaluated under a different standard: the effect of delay in treatment. *See id.* And the "effect of the delay standard" requires the submission of verifying medical evidence to establish "the detrimental effect of the delay in medical treatment." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citation omitted). A prisoner's allegation that a prison has failed to treat his condition adequately falls into the second category of cases, and thus, is evaluated under the effect-of-delay standard. *See Blackmore*, 390 F.3d at 897–98; *Napier v. Madison Cnty.,* 238 F.3d 739, 742 (6th Cir. 2001)).

There is no dispute between the parties that Anthony suffers from a serious medical condition that necessitates medical care. Nor is there any dispute that Anthony received some treatment for his condition while incarcerated. Rather, the gravamen of Anthony's complaint

concerns the sufficiency of his treatment. Anthony allegedly desired a more aggressive treatment than he received—a colostomy operation. But a desire for additional or different treatment does not by itself suffice to support an Eighth Amendment claim. *See Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014); *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) ("Where a prisoner alleges only that the medical care he received was inadequate, 'federal courts are generally reluctant to second guess medical judgments.'") (citation omitted)). This is particularly the case when a plaintiff fails to provide expert medical testimony—either in the form of an affidavit or through depositions—showing the medical necessity for such a treatment. Anthony has not presented any medical testimony from which this Court may conclude that his symptoms would have been alleviated by a colostomy. Nor has any expert testified as to the inadequacy of the treatments he did receive at the hands of Dr. Swanson. The absence of such medical testimony is fatal to Anthony's claim under our precedents. For example, in *Santiago v. Ringle*, this Court held that medical testimony was required because Santiago did "not allege that he received *no* medical treatment . . . . Instead, [he] complain[ed] that he was delayed in receiving a *specific type* of medical treatment." 734 F.3d at 591. Similarly, in *Blosser v. Gilbert*, we held that a prisoner could not prevail on his Eighth Amendment claim when he provided no medical evidence that he required surgery or that the prison's delay in scheduling surgery harmed him. 422 F. App'x at 461. The requirement that a plaintiff with a complex diagnosis such as Anthony's provide expert testimony as to the proper treatment acknowledges that this Court lacks the requisite medical expertise to properly evaluate whether Anthony's claim has merit. As in the context of medical-malpractice cases, almost all of which require testimony from a medical expert, the facts of this case are far too difficult for a fact-finder to determine, without the benefit of expert testimony, that Anthony's condition not only required treatment in the form

of a colostomy, but that the failure to provide such treatment amounted to deliberate indifference, constituting a constitutional deprivation.

Notwithstanding the lack of medical evidence in the record, Anthony argues that his claim should be submitted to a jury because his medical condition was sufficiently obvious so as to require medical attention. While Anthony is correct that his medical condition was obvious, and as such, required treatment, the obviousness standard does not apply in cases where the prisoner claims that the treatment he received was inadequate. As this Court explained in *Blosser*, 422 F. App'x at 460, the "obviousness standard . . . is primarily applicable to claims of denial or delay of *any* medical treatment rather than claims that a plaintiff was denied or delayed in receiving a *specific type* of medical treatment." *Id.* Anthony claims that he was denied a specific type of treatment—a colostomy. Consequently, Anthony must present a medical expert who can speak to the necessity of such a treatment and evaluate it vis-à-vis the treatment he received. Because Anthony has not come forward with such medical testimony, his claim cannot succeed as a matter of law. [2]

## CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's decision.

---

[2] A supervisory defendant must be either personally involved in the constitutional violation or there must be a causal connection between a supervisor's act and the alleged constitutional violation. *Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002). Because it is undisputed that Dr. Cherry did not participate directly in Anthony's medical care nor has any causal connection been alleged, the claim against him is ordered dismissed.