RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0140p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ROBERT ALSPAUGH, JR.,

        *Plaintiff-Appellant,*

    *v.*

No. 08-2330

REX MCCONNELL, ASHER BERHANE,
UNKNOWN QUINN, GERALD HOFBAUER, et
al.,

        *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 06-00111—R. Allan Edgar, District Judge.

Argued: April 19, 2011

Decided and Filed: May 23, 2011

Before: MARTIN, SILER, and ROGERS, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Michelle L. Marks, JONES DAY, Washington, D.C., for Appellant. Brian
J. Richtarcik, THE JUIP RICHTARCIK LAW FIRM, Detroit, Michigan, Cori E.
Barkman, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan,
for Appellees. **ON BRIEF:** Michelle L. Marks, JONES DAY, Washington, D.C., for
Appellant. Brian J. Richtarcik, THE JUIP RICHTARCIK LAW FIRM, Detroit,
Michigan, Cori E. Barkman, OFFICE OF THE MICHIGAN ATTORNEY GENERAL,
Lansing, Michigan, Ronald W. Chapman, Kimberley A. Koester, CHAPMAN AND
ASSOCIATES, P.C., Bloomfield Hills, Michigan, for Appellees. Robert Alspaugh,
Ionia, Michigan, *pro se*.

—————————————

**OPINION**

—————————————

SILER, Circuit Judge.  Plaintiff Robert Alspaugh filed a 42 U.S.C. § 1983 suit alleging excessive force and deliberate indifference against numerous state and private defendants.  The district court did not allow Alspaugh to conduct discovery against the state defendants, while allowing limited discovery against the private defendants.  It subsequently granted summary judgment against Alspaugh on all his § 1983 claims.  For the reasons stated below, we **AFFIRM** in part and **REVERSE** in part.

**I.**

Alspaugh, currently an inmate at the Ionia Maximum Security Correctional Facility in  Michigan, filed a pro se civil rights action pursuant to 42 U.S.C. § 1983 against numerous state and private defendants alleging multiple civil rights violations while he was imprisoned at the Marquette Branch prison in Michigan. On appeal, he focuses his claims on allegations of excessive force and deliberately indifferent medical care.

Alspaugh's excessive force claim derives from an incident on November 1, 2004, when, while returning from a hearing room, he pulled at his restraints and tried to grab a nearby food cart. In response, two prison officials, Officers Champion and Kangas, forced him to the ground with the help of other staff members. According to Alspaugh, once he was on the floor, the officers "beat and twisted [him] in such a fashion to cause pain." According to the officers, further force was needed because he continued to struggle after being taken to the ground.

Alspaugh claims that following this incident state and private defendants were deliberately indifferent in caring for a neck injury he suffered in the altercation. While Alspaugh immediately complained of pain, Nurse Ewers did not find that he had serious injuries and scheduled him to see Dr. McConnell the next day. Prison staff, however, refused to allow Alspaugh to go to his appointment because he was on a "no out of cell

movement" restriction due to the assault incident.  Two days later, Dr. McConnell examined Alspaugh from outside his cell, but had no physical contact with him. Though Alspaugh had suffered a broken neck previously, Dr. McConnell did not at this time prescribe any treatment for the injuries Alspaugh claimed to have sustained during this incident.  The following day, he was seen by Nurse Kimsel, who noted Alspaugh had a limited range of motion in his neck and at certain angles had "sharp needle like pain."

Alspaugh finally received a full examination by Dr. McConnell on November 19, 2004.  During this appointment, "Dr. McConnell noted Mr. Alspaugh moved with great care, groaning, and reluctance."  He also observed Alspaugh had a limited range of motion in his neck, ordered an x-ray, and prescribed a soft cervical collar. A radiology report subsequently showed that while there were no acute fractures, he had "degenerative changes at C5-6 and fused C6-7."

Alspaugh later "kited" (filed an official written complaint) with continued neck pain on December 2 and again on December 10. On December 14, 2004, Dr. McConnell ordered continuation of the soft cervical collar, warm compresses, and Motrin with the evening meal. Alspaugh disputes receiving the warm compresses and Motrin. He was again examined for neck pain on April 20, 2005, this time by Dr. Berhane, but "[s]he planned supportive care only." Alspaugh would eventually be treated through surgical intervention, but this occurred only after he was transferred to a different detention facility.

Alspaugh also asserts he received deliberately indifferent medical care for an unrelated toe injury.  He alleges that Nurse Ewers refused to even pick up his health care kite on July 18, 2005, and that, when more than a week later another nurse looked at his toe, the nurse stated it appeared broken. Dr. Berhane examined Alspaugh on July 28, 2005, and a subsequent x-ray confirmed the nurse's diagnosis. Dr. Berhane instructed Alspaugh to continue using aspirin from the prison store, but he later kited for pain medication that Nurse Ewers denied him. In September Alspaugh's toe was finally taped, but he claims the infection in his toe, in conjunction with the related stress and his pre-existing HIV and Hepatitis C, caused his immune system to fail.

During the subsequent legal proceedings, the district court granted a stay of discovery in favor of the state defendants based on their claim that Alspaugh failed to exhaust his administrative remedies.  State defendants Hofbauer, Aalto, and Conklin then filed a motion to dismiss; and state defendants Ewers, Champion, Kimsel, Mayotte, and Kangas filed a motion for summary judgment.  The district court adopted the magistrate judge's report and recommendation and dismissed the claims against the state defendants without lifting the stay or allowing any discovery.

The district court did allow limited discovery to go forward against the private defendants, Dr. Berhane, Dr. McConnell, and N.P. Guinn, but also dismissed the claims against them.

**II.**

The state defendants argue that Alspaugh failed to timely object to the magistrate judge's report recommending summary judgment on the excessive force claim and that therefore he has waived this issue on appeal. The report and recommendation allowed ten days for objections and stated "failure to file timely objections constitutes a waiver of any further right to appeal." Alspaugh failed to object within the ten-day time period, filing his first objections approximately two weeks late, because he did not receive the report until the deadline.  Alspaugh sought and was denied an extension of time to file.

In his first objections, Alspaugh challenged the entry of summary judgment in favor of the state defendants.  Approximately four months later, in a motion entitled "Motion to Compel the District Judge to Issue his De Novo Determinations in Accordance with Fed. R. Civ. Pro. Rule 72(b)(3)," Alspaugh again challenged the entry of summary judgment and expanded on his opposition, contending the state defendants offered no evidence to prove he resisted staff, while he offered evidence he did not. Both sets of objections were filed before the district court approved the report and recommendation on March 11, 2008.

"[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise

others will not preserve all the objections a party may have." *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991) (internal quotation marks and citations omitted).

Alspaugh did not receive the report and recommendation in a way that allowed timely objections. Nonetheless, he eventually filed two sets of objections, and, while the first set was more general, the second set was specific. And though the second set was not titled correctly, we have previously held pro se "pleadings are held to a less stringent standard than those prepared by an attorney." *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). Further, the untimely nature of his objections does not bar his appeal, because "[we] may excuse the default *in the interest of justice*," *Kent v. Johnson,* 821 F.2d 1220, 1223 (6th Cir. 1987), and Alspaugh made every effort possible to respond in a timely manner.

### III.

Alspaugh argues the district court erred by prematurely granting summary judgment in favor of the state defendants without first allowing him to conduct any discovery against them on the excessive force and deliberate indifference claims.

We "review[] for abuse of discretion a claim that summary judgment was prematurely entered because additional discovery was needed." *Vance v. United States*, 90 F.3d 1145, 1149 (6th Cir. 1996). "*If* the non-movant makes a proper and timely showing of a need for discovery, the district court's entry of summary judgment without permitting him to conduct any discovery at all will constitute an abuse of discretion." *Id.* (citing *White's Landing Fisheries, Inc. v. Bucholzer*, 29 F.3d 229, 231-32 (6th Cir. 1994)); *see also CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) ("Typically, when the parties have no opportunity for discovery, denying the Rule 56(f) motion and ruling on a summary judgment motion is likely to be an abuse of discretion."). This rule transcends the five-factor approach typically applied in determining whether a district

court abused its discretion by allowing insufficient discovery. *CenTra*, 538 F.3d at 419-20.[1]

"However, as a general matter we have upheld the denial of Rule 56(f) motions when the court deems as too vague the affidavits submitted in support of the motion." *Id.* at 420. We also uphold denial of discovery where "further discovery would not have changed the legal and factual deficiencies." *Id.* (internal citations and quotation marks omitted).

The state defendants concede that Alspaugh was never given the opportunity to conduct discovery. After Alspaugh filed his first request for production, the district court issued a stay premised on Alspaugh's potential failure to exhaust his administrative remedies. Alspaugh later opposed this ruling in light of a recent Supreme Court case,[2] and, while the district court agreed that the case eliminated the exhaustion issue, the court did not reconsider its stay on discovery. Rather, Alspaugh continued to file motions seeking discovery, including two Rule 56(f) motions, without relief being granted.

The state defendants contend that denial of discovery was appropriate because Alspaugh's Rule 56(f) motions for discovery were vague.[3] In his June 12, 2007 Rule 56(f) motion requesting the video tapes of the alleged excessive force incident, Alspaugh explained, "[t]he Video tapes are crucial material Evidence to Plaintiffs case and will contradict Defendants version, and whol[l]y support Plaintiff and Plaintiff has no access to these." The state defendants contend this statement lacked the requisite specificity, asserting, "Alspaugh does not indicate what specifically the videotape will show or why

---

[1]The provisions formerly contained in Fed R. Civ. P. 56(f) have been moved to Fed. R. Civ. P. 56(d). This change has no substantive effect. *CareToLive v. Drug Administration*, 631 F.3d 336, 344 (6th Cir. 2011).

[2]*Jones v. Bock*, 549 U.S. 199, 216 (2007), held that "failure to exhaust is an affirmative defense under the PLRA [Prison Litigation Reform Act of 1995], and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."

[3]Rule 56(d) states, "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

this information is undiscoverable without this evidence." However, it is entirely clear what the video will show—whether the guards used improper force when subduing Alspaugh. This is the very essence of his excessive force claim.

In the same motion, when requesting his medical records he stated that, "Medical Records are Needed to establish the Fact that if plaintiff was seen on such and such date, where were these visits conducted, and what treatment was issued etc . . . [P]laintiff wants to show plaintiff was *not* seen as defendants claim . . . ." This can hardly be described as vague. He coherently explains that he wants his medical records to dispute defendants' assertion they treated him on specified occasions.

Moreover, Alspaugh's request for the videotape of the fight was not of the nature that it "would not have changed the legal and factual deficiencies" of his case. *CenTra*, 538 F.3d at 420. Rather, the legal significance of the videotape is readily apparent—Alspaugh is asserting an excessive force claim against the state defendants, and the videotape would show how much force was used.

However, production of the medical records does suffer from this defect. As will be discussed in greater detail below, the state and private defendants produced enough evidence to demonstrate as a matter of law that medical personnel were not deliberately indifferent to Alspaugh's medical needs.

We also note that it is not proper to grant summary judgment without giving Alspaugh an opportunity to engage in discovery merely because the state defendants asserted qualified immunity as a defense. While we held in *Summers v. Leis*, 368 F.3d 881, 886 (6th Cir. 2004), that a district court must address the question of qualified immunity prior to discovery, we did not hold that any time qualified immunity is asserted it is proper to dismiss on that ground prior to allowing any discovery. Rather, we merely instructed the district court to scrutinize the plaintiff's complaint to determine whether a violation of a clearly established constitutional right was alleged. *Id.* In *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994), we made clear that where the issue of qualified immunity turns on contested issues of fact, its determination is not one for summary judgment.

**IV.**

Alspaugh further contends that the district court erred when it granted summary judgment in favor of the state and private defendants on the merits of his excessive force and deliberate indifference claims.

We review a district court's grant of summary judgment de novo. *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). Summary judgment is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**A. Excessive Force**

In granting summary judgment on Alspaugh's excessive force claim, the district court adopted the report and recommendation of the magistrate judge, which concluded, "Plaintiff continued to struggle until other officers assisted and leg irons were applied . . . . [State defendants] used reasonable and necessary force to control Plaintiff in response to Plaintiff's inappropriate behavior."

When "reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited." *Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010) (internal citations and quotation marks omitted). Here, there is a dispute over what happened after Alspaugh was taken to the floor. Prison officials maintain that Alspaugh continued resisting, justifying a further use of force. Alspaugh contends he did not resist, and affidavits from two inmates echo his account. When the district court accepted the recommendation of the magistrate judge endorsing the prison officers' account, it engaged in an improper credibility determination.

The state defendants cite *Lockett v. Suardini*, 526 F.3d 866 (6th Cir. 2008), as authority for the proposition that summary judgment is appropriate in this case. In *Lockett*, we held a dispute between corrections officers and inmates concerning the use of force to be insufficient to overcome defendants' motion for summary judgment. 526 F.3d at 876. But *Lockett* is not applicable to the current situation, because in that case

the plaintiff conceded that the use of force was necessary, that minimal force was applied, and that only minor injuries occurred. *Id.* at 875-76. Here, Alspaugh disputes any force was needed once he was on the floor, because he contends he was not resisting. Further, enough force was applied to Alspaugh to result in a serious neck injury that later required surgery.

**B. Deliberate Indifference**

A deliberate indifference claim has both objective and subjective components. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). The objective component requires a plaintiff to show that "the medical need at issue is sufficiently serious." *Id.* at 896 (internal quotation marks, citation, and italicization omitted). The subjective component requires a showing that "prison officials have a sufficiently culpable state of mind in denying medical care." *Id.* at 895 (internal quotation marks and citations omitted).

In evaluating a deliberate indifference claim, "[w]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id.* However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id.*

Here, Alspaugh received extensive treatment for both his neck injury and toe injury. With regard to his neck injury, Alspaugh was seen by Nurse Ewers immediately after the injury occurred. He was examined by Dr. McConnell three days later, albeit outside the cell, and Nurse Kimsel saw him again the next day because of his complaints of continued neck pain. In the following weeks and months, he received an x-ray and a soft cervical collar. Eventually, he even received neck surgery to treat the degenerative changes. With regard to his broken toe, Alspaugh was seen by Nurse Ewers the day of the injury. He was seen by another nurse approximately a week later, and by Dr. Berhane two days after that. Eventually, he would receive an x-ray for the toe and have

it taped.  While at multiple points with both injuries Alspaugh certainly would have desired more aggressive treatment, he was at no point denied treatment.

**V.**

The decision  of the district court granting summary judgment in favor of the state and private defendants on the claim of deliberate indifference of medical care is **AFFIRMED**, and the decision of the district court granting summary judgment in favor of the state defendants on the claim of excessive force is **REVERSED**.  This matter is **REMANDED** to the district court for further proceedings consistent with this decision.