NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 31, 2011[*]
Decided September 15, 2011

**Before**

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 11-1555

| | |
|---|---|
| DWAYNE ALMOND, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Western District of Wisconsin. |
| *v.* | No. 09-cv-335-bbc |
| WILLIAM POLLARD, et al., | Barbara B. Crabb, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Dwayne Almond, an inmate at the Green Bay Correctional Institution, claims in this suit under 42 U.S.C. § 1983 that Warden William Pollard, prison physician Richard Heidorn, and nurse Jeananne Zwiers deliberately ignored his chronic back pain in violation of the Eighth Amendment. The district court granted summary judgment for the defendants

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

because the undisputed evidence established that Almond had received adequate care. We affirm the judgment.

Almond has now litigated the same case twice. In June 2008, a year before he filed his current suit, Almond had claimed that Pollard, Zwiers, and several other defendants were disregarding his complaints of back pain. Almond filed that suit in the Eastern District of Wisconsin (where his prison is located), and in March 2009 Judge Griesbach concluded that Almond's evidence pointed, not to a failure to treat his back, but instead to a disagreement with a course of treatment that was adequate. *Almond v. Pollard*, No. 08-C-0546 (E.D. Wis. Mar. 26, 2009).

Two months after that ruling, in May 2009, Almond filed this action, this time in the Western District of Wisconsin, again claiming deliberate indifference to his back pain. Almond complained about the medical care received for his back for the entire period since his transfer to Green Bay in 2006, including treatment for a May 2008 slip-and-fall that is the centerpiece of his suit in the Eastern District. He also complained about groin pain and asserted, as he did in the earlier suit, that the defendants had removed his mattress and forced him to kneel in the shower, thus aggravating his back pain. Judge Crabb recognized that Almond already had accumulated three strikes and was repeating allegations about chronic back pain that were litigated in the Eastern District. But instead of first addressing Almond's application to proceed in forma pauperis, the court deferred that question and evaluated his complaint for compliance with Federal Rule of Civil Procedure 8(a). Judge Crabb concluded that Almond's claim for the denial of medical care was too nonspecific to comply with that Rule and ordered him to file an amended complaint if he desired to proceed. Almond amended his complaint, and afterward the court allowed him to proceed IFP on some aspects of his Eighth Amendment claim. The court reasoned that Almond satisfied the imminent-danger exception to the three-strikes bar to the extent that he "alleges that he suffers from painful back and groin ailments [that are] exacerbated by the removal of his mattress." *See* 28 U.S.C. § 1915(g). The court added, however, that Almond's allegations about the slip-and-fall and kneeling in the shower concerned events too old to give rise to an inference of imminent danger.

That ruling came in November 2009. In the meantime Almond had appealed the judgment from the Eastern District of Wisconsin. Judge Griesbach had denied leave to appeal IFP, and in August we had done the same after deciding that Almond had *not* established imminent danger. *Almond v. Pollard*, No. 09-2552 (7th Cir. Aug. 7, 2009). We dismissed the appeal when Almond did not pay the appellate fees. *Almond v. Pollard*, No. 09-2552 (7th Cir. Sept. 4, 2009).

Almond continued to litigate his complaint in the Western District. As the case proceeded, the district court decided that Almond could not pursue his allegations about

groin pain or the missing mattress because he had not exhausted his administrative remedies. *See* 42 U.S.C. § 1997e(a). Almond, though, still maintained that ever since 2006 he had received inadequate care for his back.

In February 2010, nine months after Almond filed this action, Dr. Heidorn examined him after he complained of abdominal tenderness and swelling on his entire body. Dr. Heidorn detected no sign of either and noted that Almond did not appear "to be in any acute distress." The doctor did find "questionable low back pain," however, so he ordered x-rays. Those x-rays did not reveal a back abnormality but did disclose a small, nonobstructive amount of air in Almond's small bowel, diagnosed as a "minimal small bowel ileus." As soon as Almond received this diagnosis, he moved in the district court for "emergency injunctive relief" because, he argued, the ileus was not being treated adequately. Judge Crabb denied that motion because Almond's prison grievances concerned only back pain, and he did not suggest that the ileus was related to his back. Moreover, the court continued, Almond did not say how Dr. Heidorn was treating the ileus. Afterward the district court reminded Almond on several occasions that this lawsuit is not about the ileus.

Then in April 2010, almost a year after Almond filed suit, the defendants moved to change venue to the Eastern District of Wisconsin because that is where the underlying events took place and where Almond, the defendants, and potential witnesses reside. The defendants also pointed to Almond's earlier suit in the Eastern District and suggested that he was forum shopping. The district court denied the motion, explaining that changing venue would delay the proceedings. Neither the defendants nor the court mentioned the preclusive effect of the earlier judgment.

Almond then moved for "summary judgment" ostensibly on the claim that his back pain had not been treated adequately. In briefing that motion, however, Almond focused on his unexhausted contention that his small bowel ileus had gone untreated after its discovery in February 2010. The defendants responded that the x-rays that led to the discovery of the ileus confirmed that Almond's lumbar spine was normal and that, at worst, he was experiencing "gas." The district court denied Almond's motion after concluding that it had nothing to do with his claim of untreated back pain. The court added that Almond had not shown that the ileus was related to his back pain or even that it is a serious medical condition.

The defendants then filed their own motion for summary judgment, which the district court granted in March 2011. The court concluded that Almond lacked evidence that Pollard and Zwiers had been involved in the treatment of his back pain. And, the court continued, the undisputed evidence refuted Almond's allegation that Dr. Heidorn had been indifferent. Dr. Heidorn first became involved with Almond's back treatment in 2006, and

since then he has examined Almond regularly, ordered x-rays on three different occasions, and prescribed and monitored pain medication. But Dr. Heidorn at no point found any evidence of an abnormality that would explain Almond's reports of chronic back pain. Moreover, the court observed, other members of the prison's medical staff had examined Almond routinely since 2006 and detected no abnormality but had prescribed analgesic balm, ice, and stretching exercises to ease his reported back pain. Despite this ruling, however, Judge Crabb allowed Almond to proceed IFP in this appeal when he asserted that his back pain continued to go untreated. (Almond did not discuss treatment of his ileus in that motion.) The court did not find that Almond was in imminent danger; instead, the court reasoned that he was "not barred by his three-strike status" because he continued "to allege that he is in imminent danger of serious physical injury because of the lack of medical treatment."

That conclusion highlights a defect in this appeal from the grant of summary judgment. Nothing changed during the three weeks between the dismissal of Almond's lawsuit and the filing of his application for IFP; Almond simply repeated his rejected allegation that his untreated back pain was causing "life-threatening harm." Yet Judge Crabb already had concluded that an abundance of evidence presented during the lawsuit refuted Almond's claim that his back pain was being ignored, so the court should not have credited his assertion of imminent danger and allowed him to skirt the three-strikes bar. *See Smith v. Veterans Admin.*, 636 F.3d 1306, 1309 (10th Cir. 2011); *Taylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010); *Ciarpaglini v. Saini*, 352 F.3d 328, 330-31 (7th Cir. 2003). As in *Taylor*, 623 F.3d at 485-86, the allegation of imminent danger was inseparably linked to the lawsuit that Almond had just lost on the merits.

That point aside, this suit never should have encompassed events occurring before June 2008 when Almond filed his complaint in the Eastern District of Wisconsin. In that suit Judge Griesbach held that undisputed evidence established that Almond's back pain was not being ignored. Despite this determination, Almond continues in this suit to challenge his medical care dating back to 2006. But the issue of Almond's treatment through June 2008 was actually and necessarily decided in the earlier suit, and thus issue preclusion (though not raised by the defendants or the district court) bars Almond from relitigating the claim. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *H-D Mich., Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 760 (7th Cir. 2007).

In Almond's lengthy appellate brief, he says very little about his back pain. He has lifted passages from orders issued by Judge Crabb and from the defendants' submissions at summary judgment, but only in passing does Almond mention his claim about untreated back pain. He has not developed, though, an argument challenging the district court's analysis of that claim, as even pro se litigants must. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). At all events we agree with the district court that a jury could not

reasonably find for Almond on the strength of the evidence presented at summary judgment. Even if we assume that Almond's evidence would support a conclusion that he suffers from back pain to a degree constituting an objectively serious medical condition, he produced no evidence that any of these defendants knowingly disregarded that condition. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011); *Jackson v. Kotter*, 541 F.3d 688, 697-98 (7th Cir. 2008). Almond's medical records show the opposite. Dr. Heidorn and other members of the medical staff have regularly examined Almond and monitored his back pain for years. They have ordered x-rays periodically and prescribed pain medicine, and Almond submitted no evidence from medical professionals questioning the efficacy of the care provided. *See Johnson v. Doughty*, 433 F.3d 1001, 1009 n.8 (7th Cir. 2006). He may disagree with the course of treatment chosen, but that disagreement does not amount to deliberate indifference. *Alspaugh*, 643 F.3d at 169; *Johnson*, 433 F.3d at 1013-14.

Almond devotes the rest of his submission to arguing that Dr. Heidorn ignored his requests for treatment of his small bowel ileus after the February 2010 x-ray. The defendants' suggestion that Almond at worst was experiencing "gas" may fail to appreciate the potential seriousness of this condition. But at this stage we cannot explore the question further because Almond did not exhaust his administrative remedies for the claim. *See* 42 U.S.C. § 1997e(a); *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010); *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005). Even if he had, we would not address the contention because Almond never amended his complaint to include this claim, and the defendants did not consent to litigate the issue. *See Fanning v. Potter*, 614 F.3d 545, 851 (8th Cir. 2010); *Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1151-52 (9th Cir. 2007); *Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 878-79 (7th Cir. 2005). As the district court reminded Almond several times, this litigation concerned only the treatment of his back, and Almond had not attempted to establish that the ileus was related to his back pain. Nothing about the outcome of this case, however, would preclude Almond from pursuing a future claim about the ileus if indeed the condition is serious, and in fact, after this case was decided by the district court, Almond filed a new lawsuit specifically about that condition.

Accordingly, we AFFIRM the judgment.