NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0274n.06

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 16-1145

**FILED**
May 15, 2017
DEBORAH S. HUNT, Clerk

KEVIN HEARINGTON,                             )
                                             )
    Plaintiff-Appellant,                 )
                                             )
v.                                           )     ON APPEAL FROM THE UNITED
                                             )     STATES DISTRICT COURT FOR THE
HARESH B. PANDYA, et al.,                     )     WESTERN DISTRICT OF MICHIGAN
                                             )
    Defendant-Appellee.                  )


Before: SUTTON and STRANCH, Circuit Judges; and STEEH, Senior District Judge.[*]

**GEORGE CARAM STEEH, Senior District Judge.**

Kevin Hearington sued the Michigan Department of Corrections (MDOC), Corizon Inc., MDOC Regional Medical Director Dr. Haresh Pandya, Marquette Branch Prison (MBP) Physician Assistant Joshua Kocha, Kinross Correctional Facility (KCF) physician Dr. Timothy Stallman, KCF nurse practitioners Susan Wilson and Penny Rogers, and KCF nurse Wendy Ball for an alleged violation of Hearington's Eighth Amendment rights. The district court granted summary judgment for all defendants. The parties dispute whether Hearington exhausted his administrative remedies and whether defendants were deliberately indifferent to Hearington's medical needs. After reviewing the record, we find that the defendants were not deliberately indifferent. Because Hearington failed to establish a constitutional violation, we AFFIRM.

---

[*]The Honorable George Caram Steeh, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. FACTS

Hearington sustained a decompressed skull fracture and left mandibular nondisplaced fracture on February, 26, 2010. (R.32-1, PageID 758, 761). Dr. Rawson performed a craniotomy and cranioplasty, placing a titanium mesh plate over an opening in Hearington's skull. (R.32-1, PageID 760-61, 806-08). Hearington alleges constitutional violations in post-surgical wound care and pain management.

Physicians initially attempted to heal Hearington's surgical wound through primary intention,[1] but scalp tension prohibited closure. (R.32-1, PageID 841). Hearington asserts that during an August 2010 appointment, Dr. Rawson recommended plastic surgery and a skin graft. (R.41-1, PageID 1265). Defendants disagree, noting that Rawson did not provide any paperwork regarding a skin graft. (R.32-1, PageID 832). In September 2010, nurse Rogers placed a referral to Dr. Stallman, questioning whether Hearington needed a skin graft following a failure to heal via primary intention. (R.31-1, PageID 841). On September 29, 2010, Stallman requested a plastic surgery consultation because "it appears likely the defect will not granulate. . ." (R. 32-1, PageID 844). Stallman canceled this request on October 11, 2010, because the wound appeared to be healing by secondary intention. (R.32-2, PageID 847). Stallman, Rogers, and Wilson assured Hearington that skin would grow over the wound. (R.41-1, PageID 1266). Hearington's skin continued to granulate throughout October 2010. (R.32-2, PageID 859). Pandya visited Hearington at this time and observed his wound. (R.39-2, PageID 1061). On November 4, 2010, the skin had granulated such that the titanium mesh plate was no longer visible. (R.32-1, PageID

---

[1] There are three major types of wound treatment – primary intention, where all tissue is closed with suture material; secondary intention, where the wound is left open and closes naturally; and third intention, where the wound is left open for several days and then closed if found to be clean.

865). The wound remained closed, covered by a thin layer of skin, with no signs of infection throughout December 2010. (R.32-2, PageID 878).

On February 25, 2011, Hearington's wound became infected and required a needle aspiration. (R.32-2, PageID 885). The wound reopened, (R.32-2, PageID 886), and subsequent tissue breakdown caused a larger open area on Hearington's skull. (R.32-2, PageID 891). Thereafter, a variety of non-party physicians examined Hearington's wound. Dr. Piazza requested a plastic surgery consultation, explaining that primary closure had failed and attempts to heal by secondary intention were recently interrupted when granulation tissue present for three months sloughed off and became infected. (R.32-2, PageID 896). Plastic surgeons recommended surgery, (Doc. 41-2, PageID 1279; Doc. 41-3, PageID 1283), which Hearington ultimately received at the University of Michigan on March 8, 2012.

Hearington was initially proscribed Ultram for pain management following his craniotomy. (R.32-1, PageID 764). Pandya considered Hearington's non-formulary medication request for Ultram, but instead ordered Norco (hydrocodone and acetaminophen) because it carried less risk of causing a seizure. (R.32-1, PageID 766). Hearington received Norco from February 26, 2010 to August 21, 2010. (R.32-1, PageID 766, 827). Throughout this time, Pandya approved prescription renewals submitted by Kocha. (R.32-1, PageID 779-83). Hearington also received Elavil (amitriptyline), which he found helpful in controlling his pain. (R.32-1, PageID 799). Kocha ordered a weaning dose of Norco to begin on August 21, 2010 and end on August 28, 2010, (R.32-1, PageID 827; R.39-2, PageID 1029), and placed Hearington on Tegretol (carbamazepine) to supplement and eventually replace narcotic medications. (R.39-2, PageID 1033). Rogers renewed this prescription, (R.32-1, PageID 881), and Wilson later reported Hearington's noncompliance, (R.32-1, PageID 842), which Hearington attributed to

complaints that the nighttime dose irritated his empty stomach. (R.32-1, PageID 843). In response, Wilson ordered a snack detail to accompany the Tegretol. (R.32-1, PageID 843).

Hearington continued to complain of headaches in October 2010. (R.32-2, PageID 852). Wilson started Hearington on Pamelor (nortriptyline), (R.32-2, PageID 852), and Stallman referred Hearington's case to the Pain Management Committee, instructing medical personnel to continue with the current pain management plan (Excedrin and Pamelor) pending the committee's conclusion. (R.32-2, PageID 864). The pain management committee recommendations were released in January 2011. (R.32-2, PageID 880). Wilson met with Hearington to review the recommendations on January 12, 2011, (R.32-2, PageID 882), and, upon Hearington's dissatisfaction, scheduled an evaluation to reconsider the recommendations. (R.32-2, PageID 882). Near this time, Wilson also ordered Ultram in response to Hearington's complaints of severe headaches. (R.32-2, PageID 889).

Hearington filed suit on July 30, 2013. The district court dismissed his complaint against the MDOC on Eleventh Amendment sovereign immunity grounds. (R.12, PageID 68). Defendants Ball and Pandya filed a joint motion moving for dismissal and summary judgment on May 2, 2014. (R.27). Defendants Corizon, Inc., Kocha, Rogers, Stallman, and Wilson filed for summary judgment on May 5, 2014. (R.31).

The district court issued an opinion and order granting both motions for summary judgment and dismissing all defendants on February 2, 2015. (R.53, PageID 1641). Hearington admitted that he was unable to prove the existence of an unconstitutional custom, policy, or procedure by Corizon, Inc. for the purpose of §1983 liability against a private corporation.

(R.53, PageID 1641 n.1).[2] The district court ruled that Hearington had failed to exhaust his administrative remedies against Pandya, Ball, Stallman, Kocha, and Rogers. (R.53, PageID 1647). Wilson was found not to be personally involved in the medical decision making processes, and the court recognized that Ball, Kocha, and Rogers were unable to make medical decisions. (R.53 at PageID 1648).

Hearington filed a motion for relief pursuant to Fed. R. Civ. P. 60(b)(6) on March 4, 2015, arguing that the district court made an erroneous ruling regarding his failure to exhaust administrative remedies. (R.56). The court denied Hearington's motion for relief from judgment on January 6, 2016, holding that these arguments were repetitive to those addressed in their original order dismissing Defendants for failure to exhaust. (R.60, PageID 1726).

Hearington filed a notice of appeal regarding the final judgment (R.54) and the order denying motion for relief from judgment (R.60) on February 4, 2016. (R.61). The Court finds that Hearington failed to establish a constitutional violation. It is, therefore, unnecessary to address the question of exhaustion of administrative remedies and the denial of his motion for relief from judgment.

## II. ANALYSIS

### A. Standard of Review

This court reviews a grant of summary judgment *de novo*, using the same Rule 56(c) standard as the district court. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995) (citing *Hansard v. Barrett*, 980 F.2d 1059 (6th Cir. 1992)). In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of

---

[2] Hearington did not challenge this ruling in his briefs, therein waiving his claim against Corizon, Inc. on appeal. *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 406 (6th Cir. 2014) (internal citations omitted) ("It is well established that an issue not raised in a party's briefs on appeal may be deemed waived.").

the non-moving party. *Nat'l Enters. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc) (citing Fed. R. Civ. P. 56(c)).

**B. Eighth Amendment Liability**

Title 42 U.S.C. § 1983 provides a cause of action "for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." At issue here is the Eighth Amendment proscription against cruel and unusual punishment, which is violated by "deliberate indifference to serious medical needs of prisoners" that causes "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (internal citations omitted).

Deliberate indifference has an objective and a subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A plaintiff must prove an objectively serious medical need; a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004).

Prison officials must then deny medical care with a "sufficiently culpable state of mind." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A plaintiff must produce evidence showing "that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703.

"Whether an official had the requisite knowledge is a question of fact subject to demonstration in the usual ways, and a factfinder may conclude that the official knew of a substantial risk from the very fact that it was obvious." *Farmer*, 511 U.S. at 842. Officials who know of a risk, but respond reasonably, cannot be found liable, even if the harm was not averted. *Id.* at 845.

Not every claim that a prisoner received inadequate medical treatment constitutes a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106. *See also Comstock*, 273 F.3d at 703 ("When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation"); *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976) ("[F]ederal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"). Further, "[a] disagreement over the course of treatment" does not constitute a cause of action under § 1983. *Clark v. Gardner*, 895 F.2d 1412, 1412 (6th Cir. 1990) (table) (citing *Westlake*, 537 F.2d at 860 n.5). *See also Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (ruling defendants were not deliberately indifferent where they provided treatment, even if it was not as aggressive as prisoner desired).

**C. The Record Does Not Support a Constitutional Violation**

**1. Objective Requirement**

Hearington's depressed skull injury and surgical wound constitute an objectively serious medical need. Physicians diagnosed his conditions and created a treatment plan. Further, his injuries were "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897.

**2. Subjective Requirement**

Defendants subjectively perceived facts and drew the "obvious" inference of substantial risk of harm to Hearington's health while treating him. *Farmer*, 511 U.S. at 842. At issue, therefore, is whether they disregarded this risk. Hearington argues their disregard is illustrated by their failure to obtain a skin graft to close his wound and provide adequate pain medication. The record, however, reflects that defendants did not disregard this risk. Defendants responded reasonably by attempting alternative methods to close Hearington's wound and prescribing various non-narcotic medications to treat his pain. Hearington's arguments merely represent disagreement with their course of treatment.

MDOC regional medical officer Haresh Pandya reviewed requests for medication and treatment. Pandya issued Norco rather than the initially requested Ultram because the latter carried a risk of seizure. (R.32-1, PageID 766). Pandya visited Hearington in the fall of 2010 while his skin was granulating in an attempt to heal his wound via secondary intention. (R.39-2, PageID 1061). These treatments differed from Hearington's preferences, but "[a] disagreement over the course of treatment" does not constitute a cause of action under § 1983. *Clark*, 895 at F.2d 1412,

Dr. Timothy Stallman reasonably responded to Hearington's wound. Physicians initially intended to heal the wound through primary intention, but scalp tension prohibited closure. (R.32-1, PageID 841). Physicians then attempted secondary intention. While waiting for the wound to granulate, nurse Rogers referred Hearington to Stallman to examine Hearington's potential for a skin graft. (R.31-1, PageID 841). Stallman examined the wound and requested a plastic surgery consultation because, at that time, granulation appeared unlikely. (R. 32-1, PageID 844). But two weeks later, the wound appeared to be healing by secondary intention and

Stallman canceled the consultation. (R.32-1, PageID 847). The wound continued to granulate and heal for over three months. (R.32-2, PageID 858-59, 866). Hearington eventually sustained an infection that caused secondary intention to fail. Nonetheless, Stallman is not liable. He provided treatment, and even if Hearington disagreed with that treatment and secondary intention was ultimately "inefficacious[]," such treatment does not display "deliberate indifference to the prisoner's needs" in violation of the Eighth Amendment. *Comstock*, 273 F.3d at 703.

Stallman also reasonably treated Hearington's pain. Stallman referred Hearington's case to the pain management committee and ordered the continuation of Hearington's pain management plan pending their evaluation. Hearington did not go without pain medication. His disagreement with the physicians' prescriptions does not implicate the Eighth Amendment.

Physician assistant Joshua Kocha acted reasonably. He responded to Hearington's pain by weaning him off the narcotic Norco, (R. 32-1, PageID 827), and prescribing non-narcotic medications. Although it did not include the skin graft that Hearington desired, Kocha treated Hearington's wound. Despite the fact that the effort to heal by secondary intention was ultimately ineffective, Kocha's actions do not violate the Eighth Amendment.

Nurse practitioner Susan Wilson reasonably accommodated Hearington's pain. Hearington received treatment when requested. His treatment plan was continually revised based on his feedback. Wilson ordered Hearington additional snacks to consume with Tegretol when he complained that the medication irritated his stomach. (R.32-1 at PageID 839). Wilson thereafter prescribed Pamelor as an alternative to Tegretol, (R.32-2, PageID 852) and ordered Ultram for Hearington's severe headaches, (R.32-2, PageID 889). She also scheduled a second evaluation when Hearington disliked the Pain Management Committee's initial conclusion. (R.32-2, PageID 882).

Nurse practitioner Penny Rogers reasonably monitored Hearington's wound. Following the wound's failure to heal via primary intention, Rogers submitted a referral to Stallman regarding a skin graft. (R.31-1, PageID 841). Her conduct does not become unreasonable because Stallman thereafter withdrew a plastic surgery consultation request based on his opinion that the wound was healing by secondary intention. (R.32-2, PageID 847).

Nurse Wendy Ball provided reasonable care in light of her limited authority. She could not create Hearington's treatment plan or order prescriptions. Further, there is no evidence that she refused to comply with physicians' orders or interfered with Hearington's treatment.

### III. CONCLUSION

For the reasons set forth above, we AFFIRM the judgment of the district court.