NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0469n.06

No. 17-2277

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

EUGENE MCCAIN,                                          )
                                                       )
    Plaintiff-Appellant,                               )
                                                       )
v.                                                     )
                                                       )
ST. CLAIR COUNTY, et al.,                              )
                                                       )
    Defendants,                                        )
                                                       )
AMANDA BISHOP, LPN; BRANDI SCHIEMAN,                   )
LPN; KIMBERLY KING, LPN,                               )
                                                       )
    Defendants-Appellees.                              )

**FILED**

Sep 13, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

Before: COLE, Chief Judge; SUTTON and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Eugene McCain suffered two seizures during a brief stay at the St. Clair County Jail. He sued three nurses who were on duty, claiming that their failure to more promptly obtain his anti-seizure medication, and their care for him after the seizures, exhibited deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment. He also claimed that their conduct was grossly negligent and that they were therefore not immune from tort liability under Michigan's Governmental Tort Liability Act. The district court granted the nurses summary judgment. We AFFIRM.

I.

Eugene McCain was booked into the St. Clair County Jail at 10:25 p.m. on Saturday, March 2, 2013. A sheriff's deputy noted on a medical intake form that McCain was taking Tegretol for

his seizure disorder and that he reported having last taken his medication at 4:00 p.m. that day. There is no evidence in the record, however, that McCain had an active prescription for Tegretol.[1]

The deputy placed the completed form in a metal bin for medical personnel to pick up. The jail's nurses regularly picked up these forms multiple times per shift. A nurse would then review the medical screening form and attempt to verify any medication by contacting the listed pharmacy.[2] The jail did not keep supplies of Tegretol on hand, but nursing staff could order medications. Orders would normally be processed the next business day, but staff could order urgent medications from the hospital pharmacy at any time.

Defendant Amanda Bishop was the nurse on duty when McCain was booked. Her shift started at 7:00 p.m. on Saturday, March 2, and ended at 7:00 a.m. on Sunday, March 3. She has no recollection of the events during that shift; she does not remember collecting McCain's form, reviewing his form, or speaking to him during her shift; nor is there any indication in McCain's file that she did so. Bishop testified, however, that even if she had seen McCain's medical intake form, she would not have been concerned that McCain might not receive his medication until Monday. Because "[m]ost seizure medications are based on a therapeutic level," she believed McCain's level should have remained above that threshold until Monday based on his report that he had taken his medication on Saturday. Bishop did not order the Tegretol before the end of her shift.

---

[1] McCain's most recent prescription, before his booking, was dated February 29, 2012. Under Michigan law, "a prescription [for a noncontrolled substance] is valid for 1 year from the date the prescription was issued." Mich. Admin. Code R. 338.479b(4).

[2] On McCain's intake form, the deputy indicated that McCain had reported that his prescription was from "Family Pharmacy." McCain, in fact, had last filled his most recent prescription at "Blue Water Pharmacy."

We do not know who worked the shift after Bishop's, from 7:00 a.m. to 7:00 p.m. on Sunday, March 3. McCain claims that it was defendant Brandi Schieman. A review of the record—including McCain's record citation—reveals no support for this claim. McCain's statement that it "may have been Nurse Schieman" is pure speculation and is insufficient to create a question of fact as to whether Schieman was on duty on Sunday, March 3. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). There is no evidence that the nurse on duty saw McCain or verified or ordered his medication. But neither is there any evidence that McCain made any request for his medication, submitted a "kite," or filed a grievance over not receiving his medication.

*First Seizure.* We do know that Bishop returned to work for another twelve-hour shift at 7:00 p.m. on Sunday, March 3. McCain suffered his first seizure on Monday at approximately 6:30 a.m.[3] Inmates called for help, and Bishop, the on-duty nurse, responded approximately two minutes later. She did not take his vitals or call a doctor,[4] but she did note that McCain had "frothy lips with [a] hint of blood," that he had stopped seizing and was "arousable after about seven minutes after arrival," and that he "was able to move on own, open eyes and understand surroundings." She ordered that McCain be placed on "30 minute rounds"—the deputies were to

---

[3] The exact time of the seizure is unknown. There is a video of the incident, but, in the district court, the parties agreed that the time stamp on the video (indicating approximately 5:37) was slow. The district court stated that the seizure occurred around 6:30 a.m., and the parties raise no objection to that conclusion.

[4] McCain argues that Bishop violated jail policy by not calling a doctor after his first seizure. Setting aside whether such a violation would be sufficient to defeat summary judgment, McCain has not produced evidence to show the existence of a policy. McCain cites Dr. Stromberg's testimony, but that testimony does not support McCain's claim that nurses were required to report all seizures to the jail doctors. Dr. Stromberg testified that such information was "[n]ot always" though "more often than not" conveyed to the doctors. He also testified that medical staff were instructed to report "urgent" conditions to doctors but when asked whether a seizure would be considered an urgent medical condition, he answered, "Not necessarily."

check on him and monitor him for any distress—in "5 cell," a glass-walled cell near the officers' desk in the assessment area.

Before her shift ended at 7:00 a.m., Bishop ordered McCain's Tegretol. At approximately 8:54 a.m., Advanced Care Pharmacy opened the prescription request and filled it, along with several other inmate prescriptions. Meanwhile, defendants Schieman and Kimberly King began their shifts at 7:00 a.m. The Tegretol was delivered to the jail at approximately 11:05 a.m. The next medication pass in the assessment area was to take place mid-afternoon.

*Second Seizure.* At approximately 2:00 p.m., before he received his medication, McCain suffered a second seizure. A deputy summoned medical staff and Schieman and King responded just over two minutes later. McCain was still seizing when the nurses arrived, and Schieman was unable to elicit a response from him. She asked for an ambulance, which arrived at 2:15 p.m. and transported McCain to the hospital. McCain was hospitalized for several weeks and was diagnosed with a subarachnoid bleed in his brain; he lapsed into a coma, had surgery to relieve the pressure on his brain, suffered renal failure, and had another surgery on his arm for compartment syndrome.

McCain sued Bishop, Schieman, and King[5] under 42 U.S.C. § 1983, claiming that they had been deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment. He also brought an action under state law, claiming that the nurses' conduct amounted to "gross negligence" falling outside the immunity conferred by Michigan's Governmental Tort Liability Act, Mich. Comp. Laws § 691.1407(2)(c). The district court granted the nurses' motion for summary judgment. The district court held that, even if McCain had shown

---

[5] McCain also sued St. Clair County and several officers of the jail. The district court granted these defendants summary judgment, and McCain did not challenge that ruling on appeal.

a serious medical need, which the court doubted in dictum, he had failed to show the defendants' deliberate indifference to that need.[6] McCain timely appealed.

## II.

The district court properly granted summary judgment if, viewing the evidence in the light most favorable to McCain, there remains "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Lobby, Inc.*, 477 U.S. at 250. We review de novo the district court's grant of summary judgment. *Franklin v. Kellogg Co.*, 619 F.3d 604, 610 (6th Cir. 2010).

## A.

A state actor may not be deliberately indifferent to a pretrial detainee's serious medical needs. *Phillips v. Roane County*, 534 F.3d 531, 539 (6th Cir. 2008). "The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Id.* (citation omitted). A deliberate indifference claim has both an objective and subjective component. The objective component "requires the existence of a sufficiently serious medical need"—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895, 897 (6th Cir. 2004) (quotation marks, emphasis, and citation omitted).

---

[6] Afterwards, McCain filed a motion for reconsideration based largely on the district court's statement that McCain had not challenged the adequacy of the care he received. The district court acknowledged its error but denied the motion.

The subjective component requires that the plaintiff show that the official acted with "a sufficiently culpable state of mind"—that is, one in which "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994) (quotation marks and citations omitted). The official need not act with "the very purpose of causing harm or with knowledge that harm will result"; rather, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 835–36. When a plaintiff challenges the *adequacy* of the treatment he received, he generally must show that the treatment was "so woefully inadequate as to amount to no treatment at all," *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quotation marks and citation omitted), or that the defendant otherwise gave treatment while "consciously exposing the patient to an excessive risk of serious harm." *LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001); *see, e.g.*, *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 682 (6th Cir. 2013) (holding that the jury could infer that the defendant knew that the medication he prescribed would be toxic when taken with the patient's other medications). Because McCain's claim fails on the subjective prong, we need not address the objective one.

*Before First Seizure.* McCain first argues that Bishop acted with deliberate indifference when she failed to secure his seizure medication before his first seizure.[7] Bishop was the nurse on duty when McCain was first booked on Saturday night. Although Bishop does not recall whether she saw McCain's intake form, the nurses routinely picked up the medical intake forms multiple times per shift. But even if Bishop had seen the form, she would have learned from it only that

---

[7] McCain makes this same claim as to Schieman, but, as explained above, the record does not support a finding that Schieman worked a shift before McCain's first seizure.

McCain had a seizure disorder, had been prescribed Tegretol, and had last taken his medication at 4:00 p.m. that day. The intake form did not include any information about how often Bishop took the medication or when he should take his next dose. Additionally, Bishop testified that Tegretol, like other seizure medications, worked by "maintain[ing] a therapeutic level in the bloodstream." She stated that, based on McCain's report that he had last taken his medication on Saturday at 4:00 p.m., "his level should have been therapeutic and lasted until Monday." Based on her knowledge and experience, Bishop did not believe that she needed to secure McCain's medication before her first shift ended at 7:00 a.m.

Bishop returned to work another shift at 7:00 p.m. that day, at which point McCain's medication still had not been ordered. McCain did not complain about not receiving his medication, however, nor did he ever send a "kite" to request it. And, at the time, McCain had presented with no symptoms.

Bishop testified that, even if she had known that McCain took Tegretol, she would not have ordered his medication over the weekend. The jail did not keep Tegretol on hand, and during her shift, McCain's pharmacy would have been closed. Although she could have gotten a prescription from the emergency room through the inpatient pharmacy, her understanding that Tegretol would remain in the bloodstream led her to believe that McCain was in no danger by waiting until Monday, when the jail normally received medications. Schieman and King had the same understanding. Thus, the evidence in the record does not suggest that Bishop *in fact* perceived a substantial risk to McCain from the delay in receiving his medication. *See Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

McCain's appellate brief offers only this statement to support his claim that Bishop actually perceived a risk: "Nurse Bishop admitted that she knew that a seizure disorder is a serious condition, and that suddenly stopping the medication is not recommended and can lead to the onset of seizure." Appellant Br. at 53. He provides no record citation for that admission, despite being criticized by the district court for failing to provide a record citation for this exact statement and despite being reminded that "[t]he court has no obligation to search the record beyond where the parties cite." R. 81, Opinion, PageID 2149 & n.6 (citation omitted); *see Sagan v. Sumner Cty. Bd. of Educ.*, 501 F. App'x 537, 540 (6th Cir. 2012) (citing *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008); Fed. R. App. P. 28(a)(7) & (e); 6 Cir. R. 28(a)). Other than that apocryphal statement, McCain presents only arguments and evidence that, at best, show that Bishop *should have* known of a risk. But, as the Supreme Court made clear in *Farmer*, negligence is not punishment: "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." 511 U.S. at 838.

McCain relies principally on our unpublished decision, *Parsons v. Caruso*, 491 F. App'x 597 (6th Cir. 2012). But the facts of this case are far different. In *Parsons*, the inmate had an active prescription for an anti-seizure medication (Dilantin) that the jail kept in stock. Parsons also suffered from mental health problems, was "agitated," "histrionic with flight of ideas," and affirmatively requested mental health services by sending a "kite." *Id.* at 599–600 (quotation marks omitted). A physician's assistant prescribed Dilantin the morning of August 26, indicating that it should start that day. But instead of administering the Dilantin that it had on hand, the jail staff opted to wait until the local pharmacy filled the prescription the following day. *Id.* at 600. Parsons received Dilantin for the first time at 6:00 p.m. on August 27 and died the next day due to

seizure-related complications. *Id.* Under these circumstances, we held that a jury could conclude that officials had acted with deliberate indifference. *Id.* at 604–06. In the present case, however, McCain did not have an active prescription for Tegretol and Tegretol was not kept on hand in the jail. McCain had taken his last dose of Tegretol at a time when the nursing staff believed it would remain at a "therapeutic level" in his bloodstream until the pharmacy opened on Monday. And McCain neither exhibited any signs of distress nor requested his medication or health services more generally at any point. Viewing the evidence in a light most favorable to McCain, no reasonable jury could conclude that Bishop acted with deliberate indifference by not securing McCain's seizure medications via the emergency room pharmacy.

*Response to First Seizure.* Next, McCain argues that he should have gotten *better* care from Bishop after his first seizure, noting that Bishop neither called a doctor to check on him nor took his vital signs. But Bishop took other affirmative measures to abate the risk to McCain's health after his first seizure. In response to the seizure, Bishop checked McCain's status and confirmed that he was "able to move on own, open eyes and understand surroundings." She moved McCain close to the officer station, placed him on thirty-minute checks, and ordered McCain's Tegretol. McCain's arguments that Bishop should have done more—such as placing Bishop on fifteen-minute, not thirty-minute, checks—are merely arguments that she was negligent. But "deliberate indifference entails something more than mere negligence," though "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835; *see Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006); *cf. Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (noting that "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference" (alteration in original) (quoting *Mandel v. Doe*, 888 F.2d

783, 789 (11th Cir. 1989))); *LeMarbe*, 266 F.3d at 439 (holding that defendant cannot give treatment that "consciously expos[es] the patient to an excessive risk of serious harm").

McCain criticizes Bishop, arguing that "she did not make sure that Mr. McCain got his seizure medication" after his first seizure. He acknowledges, however, that she ordered the Tegretol.[8] The timeline is also relevant: McCain had his first seizure at approximately 6:30 a.m.; Bishop ordered the Tegretol after immediately responding to his seizure; Advanced Care Network received the prescription at 6:43 a.m. and sent the medication to the jail which received it at 11:05 a.m.; but Bishop's shift had ended at 7:00 a.m. The Fourteenth Amendment does not require Bishop to have done more. Viewing the evidence in the light most favorable to McCain, no reasonable jury could find that Bishop acted with deliberate indifference either before or after his first seizure.

*Response to Second Seizure.* Nurses Schieman and King began their shifts at 7:00 a.m. on Monday, March 4, shortly after McCain's first seizure. To the extent that McCain complains that Schieman and King failed to secure his seizure medications during their shift, this complaint must fail: Bishop had *already ordered* the medication. The Fourteenth Amendment did not require Schieman and King to double-check the order or to attempt an alternative method to order the same medications in the hope that it would be quicker. McCain suffered a second seizure at approximately 2:00 p.m. on Monday, March 4, and he does not argue that Schieman's and King's

---

[8] McCain alludes to evidence that Bishop may have improperly stated that Dr. Stromberg had ordered the Tegretol, when Dr. Stromberg testified that he was out of town and was not contacted about McCain at that time. Regardless of whether this is true—whether Dr. Stromberg was contacted, whether Bishop wrote down Dr. Stromberg's name when she meant Dr. Carley (the on-call doctor), whether Bishop was authorized to use Dr. Stromberg's name because she had verified the prescription, or whether Bishop improperly represented that a doctor had authorized the prescription—Bishop's behavior was not deliberately indifferent. She ordered McCain's seizure medication, and the pharmacy filled the prescription.

responses to his second seizure—which included sending him to the hospital—were inadequate. No reasonable jury could find that either Schieman or King acted with deliberate indifference. Accordingly, the district court appropriately granted the defendants' motion for summary judgment as to McCain's § 1983 claim.

B.

In Michigan, government employees, like the nurses here, are immune from tort liability unless their conduct rises to the level of "gross negligence that is the proximate cause" of the plaintiff's injury. Mich. Comp. Laws § 691.1407(2)(c). Michigan defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(8)(a). McCain makes no argument why his state claim for gross negligence would survive the defendants' summary judgment motion if his § 1983 claims do not. Accordingly, we affirm the district court's grant of summary judgment on this claim.

\* \* \*

We AFFIRM the judgment of the district court.